UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN FOX, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOWN OF FRAMINGHAM, )<br>FRANMINGHAM SCHOOL )<br>COMMITTEE, MICHAEL WELCH, )<br>in his Individual and Official Capacities, )<br>JEFFRY CONVERY, in his Individual )<br>and Official Capacities, and )<br>STACY L. SCOTT, in his Individual )<br>and Official Capacities, )<br>)<br>Defendant(s). )<br>) | Civil No. 14-CV-10337-LTS |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

September 12, 2016

SOROKIN, J.

Plaintiff Kevin Fox ("Fox"), a former social worker at Framingham High School ("FHS"), brings this action against the Defendants in connection with his alleged retaliatory constructive discharge. Specifically, Fox asserts that Defendants attempted to quiet him through intimidation when he spoke out about incidents of alleged sexual assault between students at FHS. Fox's claims are for Violation of the Massachusetts Whistle Blower Statute, M.G. L. ch. 149 § 185 (Count I), Violation of 42 U.S.C. § 1983 (Count II), Violation of Title IX of the Education Amendments of 1972 (Count III), and Violation of the Massachusetts Civil Rights Act, M.G.L. ch. 12 §§ 11H and I (Count IV). For the following reasons, Defendants' Motion for Summary Judgment, Doc. 77, is ALLOWED IN PART and DENIED IN PART.

I. MATERIAL FACTS

The following material facts are viewed in light of the non-moving party, which in this case is Fox.[1]

From August 2002, to March 27, 2013, Fox was employed as a social worker at FHS. Doc. 88 at 2. Around May 2, 2012, a female student ("Student 1"), told Fox that she and a male student ("Student 2") had an unwanted sexual encounter in the school. Doc. 88 at 28. Fox reported to the school resource officer what Student 1 had told him. Id. at 28–29. Fox also filed a report with the Department of Children and Families. Id. at 29. On May 3, 2012, Student 1's mother called Fox and relayed additional details relating to the sexual encounter. Id. Fox relayed this new information to Defendant Convery (FHS' Vice Principal). Id. An administrative meeting was held around this time. Id. The meeting included Fox, Defendant Welch (FHS Principal), and several other FHS employees. Id. FHS then took some measures to safeguard Student 1, which included removing Student 2 from the cafeteria during the study hall he shared with Student 1, and placing Student 2 in the Academic Development Center. Id. at 8, 29. Student 2 was instructed not to interact with Student 1, not to contact Student 1, and not to have friends or acquaintances contact Student 1. Id. at 8. According to Fox, these measures were wholly inadequate. Id. at 30.[2]

---

[1] Record Citations are to the court's Electronic Filing System ("ECF"), and the page number appears on the upper right hand corner of ECF, cited as "Doc. __ at ___."

[2] The parties spend much of their briefs setting forth the particulars of the incidents and arguing about whether FHS took adequate responsive measures. This is not the issue before the Court and, thus, the Court does not weigh in on who was right with respect to the incidents, or whether FHS' response was adequate. The Court concerns itself with the relevant material facts necessary to decide the claims presented.

Then, in early June, another female student ("Student 3"), reported to Fox that she too had an unwanted sexual encounter with Student 2. Id. Student 2 was suspended for five days. Id.

Beginning in September 2012, when school resumed, Fox sought to have FHS take additional measures with respect to Student 2. Id. at 30–31. Fox attended a meeting with Welch and Convery in the fall of 2012. In that meeting Fox advocated for getting the District Attorney's ("DA") office involved. Id. at 31. According to Fox, Defendant Welch responded: "Kevin, just how public do you want to make this?" [3] Id. Also, according to Fox, Welch then "leaned in closer" to Fox and said, "Kevin, how well do you know Gerry Leone [the Middlesex DA]?" Id. Fox describes Welch as "leaning in" and implies that the statement was made in a threatening manner. Id.; Doc. 90 at 5. Fox replied that he knew he was the Middlesex DA and that it would be helpful if he or a representative from his office could explain why no charges were filed. Doc. 88 at 31. According to Fox, Welch then said: "I am on a first name basis with Gerry" and that Welch "would look into having such a meeting." Id. Fox continued to press his disagreement with FHS's handling of the sexual assault complaints as well as his view that the school was sending the wrong message to the student body. Id. Fox reports that Welch responded, "Kevin if you don't like my leadership style you don't have to work here." Id.

On December 3, 2012, Corinne Nye, the head of the special education department, emailed Welch advising that Fox had not been meeting with a particular student as required by that student's Individual Education Plan ("IEP"). Id. at 16. On December 4, 2012, Fox sent an email to Welch again raising dissatisfaction with FHS' response to the sexual assault complaints as well as the more general issue of sexual assaults. Doc. 88-1 at 38. According to Fox, "shortly

---

[3] Welch denies some of the statements attributed to him by Fox. Doc. No. 90 at 5. For purposes of the Defendants' Motion for Summary Judgment, these denials are not relevant given the summary judgment standard.

3

after" Welch began to review Fox's work records and employment history. Doc. 88 at 33–34. Then, on or about December 7, 2012, Welch issued a formal reprimand to Fox having to do with Fox's failure to provide counseling services to a student at FHS. Id. at 34 Fox asserts he was never advised of the student's counseling requirement. Doc. 87 at 6. Fox followed the school's grievance procedures and after a level III hearing was held on January 29, 2013, the reprimand was removed from his file pursuant to a decision of Defendant Scott (the Superintendent) on February 12, 2013. Doc. 88-1 at 42.

Following the reversal of his discipline, Welch told Fox to take an administrative leave of absence. Doc. 88 at 34–35. Also, during this period and on at least six separate occasions, Welch asked Fox if Fox intended to resign. Id. at 35. [4] Welch, according to Fox, also said that Welch could "make" Fox take an administrative leave. Doc. 88-3 at 46. Fox declined to take leave. Id. at 46–47. There is no evidence that Welch took further steps to impose a leave. See id. According to the Defendants, Welch's questions were prompted by (1) the fact that Fox was seen by colleagues and students cleaning out his office, and (2) because Fox made statements suggesting to colleagues he might resign. Doc. 90 at 8–9. Fox does not recall telling anyone that he was going to "resign," Doc. 88 at 21, but he admits to having conversations with colleagues regarding how he wanted to "finish off his social work career," and he did tell them he was "contemplating what [he was] going to do," id. at 20.

On or about January 7, 2013, the "Framingham Whistleblower" Facebook page was launched to shed light on the alleged sexual assaults at FHS, which contained comments and revealed confidential information, including the names of the alleged victims. Id. at 35. Welch

---

[4] According to Fox, these interactions with Welch occurred sometime after December 7, 2012. However, no further details have been set forth, i.e., exact dates or additional details.

4

testified at deposition that he was concerned about the release of the confidential information and he interviewed Fox and several students in an effort to determine how the information was released. Doc. 88-4 at 157–64. After Welch questioned Fox, Welch found no evidence that Fox released any confidential information. Doc. 88 at 35–36. According to Fox, Welch conducted the interviews relating to the Facebook page to "discover information that could be used to terminate" Fox. Id. at 24. At the hearing on the instant motion, Fox argued that the investigation was unwarranted and was designed to intimidate him.

At some point during the 2012-2013 school year, Welch and Scott, in part, arranged for the "White Ribbon" organization to conduct an assembly regarding sexual assaults and proper treatment of women. Id. at 36. The assembly was scheduled for March 27, 2013. Id. No one invited Fox to participate in the assembly despite the fact that he was the most senior social worker at FHS. Id. There is no dispute that a flyer from the Principal invited every student and every faculty member (thus including Fox) to attend the assembly. Id. at 23.

On March 27, 2013, Fox submitted a letter of resignation which was effective immediately, and published on March 28, 2013, in the Framingham Patch. Doc. 31 at 55–56. Therein, Fox writes about his reason for resigning from FHS. In relevant part, he states:

> Today is my last day as an employee in the Framingham Public School District and at Framingham High School. My moral and ethical standards will not allow me to stay.
>
> To be perfectly clear, I am making the decision to leave because of Mike Welch's indifference toward the emotional development of the students at FHS and his disregard for the expertise of the social workers in the building. Drug involvement has proliferated (and it is not the legislatures' doing), binge drinking among teens and unwanted sexual incidences continue to put people at great risk, and the leadership has turned a blind eye toward the fraying social civility within the building.
>
> . . .
>
> Sadly, I was asked to take a paid administrative leave in December (which I refused) and then had to file a grievance against Mike Welch for attempting to discipline me for an unrelated matter. The "discipline" was a clear act of retaliation and an attempt to quiet me

> relative to his mishandling of the sexual assault. I won the grievance and the letter was expunged.
>
> So, it is time to move on. I know some of you are aware of the Framingham Whistleblower facebook page. I did not create the page—proudly, I barely know what a mouse is—but some civic minded people concerned about an institutional cover up did create the page and for that I admire their activism.

Id.

On this record, the Court now turns to Defendants' Motion for Summary Judgment as to all Counts of the Complaint.

II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Further, a court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

III.    DISCUSSION

    A.  Violation of Massachusetts Whistleblower Statute (Count I)

In Count I Fox brings a claim for violation of the Massachusetts Whistleblower Act, M. G. L. ch. 149 § 185 ("MWA"), against the Town of Framingham and the Framingham School Committee.[5] "To prevail on an MWA claim, an employee must show 'that he engaged in protected activity and that his participation in that activity played a substantial or motivating part in the retaliatory action.'" Pierce v. Cotuit Fire Dist., 741 F.3d 295, 303 (1st Cir. 2014) (quoting Welch v. Ciampa, 542 F.3d 927, 943 (1st Cir. 2008)). The MWA defines retaliatory action as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." Mass. Gen. L. ch. 149 § 185(a)(5). Fox claims he was "disciplined, marginalized, and threatened with job loss in such an outrageous and intolerable way that he ultimately was compelled to end his career and livelihood as a social worker; to wit, he was constructively discharged." Doc. 87 at 5.

"Constructive discharge typically 'refers to harassment so severe and oppressive that staying on the job while seeking redress—the rule save in exceptional cases—is intolerable.'" Gerald v. Univ. of P.R., 707 F.3d 7, 25 (1st Cir. 2013) (citing Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003)). "A successful constructive discharge claim requires 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'" Id. (citing Pa. State Police v. Suders, 542 U.S. 129, 147 (2004)); see GTE Prods. Corp. v. Steward, 653 N.E.2d 161, 168–69 (Mass. 1995) (utilizing the First Circuit's constructive discharge standard). The standard for assessing a constructive discharge claim "is an objective

---

[5] The individual Defendants are not implicated by Count I and therefore, to the extent that Count I goes forward, it does not go forward as to the individual Defendants.

one; it 'cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held.'" Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000)); see Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 561 (1st Cir. 1986) ("[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge." (quoting Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985)).

Fox fails to meet the objective standard to show constructive discharge. Fox provides evidence of his subjective view of his treatment. For example, Fox testified at his deposition that "going to work was a living hell." Doc. 88-3 at 49. Even assuming that Fox sincerely felt this way, the evidence does not support constructive discharge given the objective standard applicable. The undisputed evidence reveals that Fox was not demoted, he suffered no change in pay, benefits or responsibilities, and no interference in the daily performance of his duties. The cases finding constructive discharge have involved employees who have suffered some demonstrable change in pay, benefits, responsibilities or interference with the performance of

duties. [6] In contrast, the actions and interactions Fox describes are of the type that courts have rejected as a basis of constructive discharge.[7]

Nonetheless, an MWA retaliation claim may also lie, as the statute so states, for "other adverse employment action taken against an employee in the terms and conditions of employment." Mass. Gen. L. ch. 149 § 185(a)(5). In the context of an employee with an unblemished multi-year record of performance without incident or question, an inference of pretext is permissible where problems arose only after the employee engaged in a protected

---

[6] See Vieques Air Link, Inc. v. U.S. Dep't of Labor, 437 F.3d 102, 108 (1st Cir. 2006) (finding that there was sufficient evidence to support a constructive discharge where an employee was transferred to a different island that he had no way of reaching by boat or plane); Ramos v. Davis & Geck, Inc., 167 F.3d 727, 731 (1st Cir. 1999) (finding that there was sufficient evidence to support a constructive discharge where employee was demoted, assigned to a notoriously bad cubicle, lacked computer access, required to work on his vacation time, threatened with assault by a supervisor, and his duties were changed); Cazzola v. Codman & Shurtleff, Inc., 751 F.2d 53, 55 (1st Cir. 1994) ("Even the victim of unlawful discrimination is expected to seek legal redress while still employed unless actually fired, or constructively discharged due to a *drastic reduction* in the quality of working conditions.") (emphasis added) (quotation marks omitted)); Flores-Suarez v. Turabo Med. Ctr. P'ship, 165 F. Supp. 2d 79, 92 (D.P.R. 2001) (finding that there was sufficient evidence of constructive discharge where plaintiff was denied access to employee locker, her work schedules were changed without notice, her requests for sick days and time off were denied, and she was subjected to greater demands than other employees).

[7] See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000) ("[E]xcluding [the plaintiff from operational meetings, relocating his staff, and relegating him to developing third-party clients . . . does not furnish a legally cognizable reason to treat a resignation as a constructive discharge."); Serrano-Cruz v. DFI P.R., Inc., 109 F.3d 23, 27 (1st Cir. 1997) ("Loss of prestige in a job transfer, standing alone, cannot support a finding of constructive discharge."); Whitney v. NBC Operating, LP, Civil Action No. 14-40066-LTS, 2015 U.S. Dist. LEXIS 162217, at *28 (D. Mass. Nov. 16, 2015) (finding that there was no constructive discharge where plaintiff alleged only that his department supervisor excluded him from meetings, told him to quit his job, "shut [him] off," and spoke to him less (alteration in original) (citing Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 51 (1st Cir. 2008)); Thirkield v. Neary & Hunter OB/GYN, LLC, 76 F. Supp. 3d 339, 352 (D. Mass. 2015) (finding that there was no constructive discharge where coworkers gave plaintiff the "cold shoulder" or subjected her to "bullying conduct" in retaliation for reporting harassment (citing Gawley v. Ind. Univ., 276 F.3d 301, 307, 316 (7th Cir. 2001)); GTE Prods. Corp. 653 N.E.2d at 169 (finding that a single unfavorable performance review or a one-time demotion were insufficient to show constructive discharge).

activity. Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000). Here, summary judgment is not appropriate because a reasonable jury could find that Fox suffered a change in the terms and conditions of his employment: Welch purportedly and improperly threatened Fox with imposed administrative leave, repeatedly asked whether Fox intended to resign, and imposed discipline (which was subsequently vacated by Scott). Given the purposes behind the MWA, the Court cannot say on the record before it that no jury could view these facts as constituting an adverse action in the terms and conditions of Fox's employment. See, e.g., Valentín-Almeyda v. Mun. of Aguadilla, 447 F.3d 85, 97 (1st Cir. 2006) (finding that admonishment letters were adverse employment actions); King v. City of Boston, 883 N.E. 2d 316, 324 (Mass. App. Ct. 2008) ("[T]he reference in G.L.c. 151B, § 4(1) to 'terms, conditions or privileges' is pretty open-ended language . . . and a number of cases have extended coverage to slights or indignities that might seem evanescent." (second alteration in original)).

Accordingly, the Motion for Summary Judgment is ALLOWED insofar as Fox advances a theory of constructive discharge, but otherwise DENIED. Fox asserts this claim only against the Defendant Town and the Defendant School Committee, Doc. 31 at ¶ 66, and thus this claim is only viable against these two Defendants.

B.   Retaliation Under 42 U.S.C. § 1983 (Count II)

As a public-employee plaintiff seeking to prevail under a § 1983 retaliation claim, Fox must prove: (1) that he spoke as a citizen on a matter of public concern; (2) that his interest in commenting upon these matters outweighed defendant's interest in the efficient performance of its public services; and (3) that the protected expression was a substantial or motivating factor in

the adverse employment decision. Decotiis v. Whittemore, 635 F.3d 22, 29 (1st Cir. 2011).[8] "The first step itself has two subparts: the plaintiff must establish (a) that he spoke as a citizen and (b) that the speech was on a matter of public concern." Bolduc v. Town of Webster, 629 F. Supp. 2d 132, 146 (D. Mass. 2009) (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)); see Garcetti, 547 U.S. at 418 ("The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." (citation omitted)). For purposes of the instant motion the Court assumes, without deciding, that the occurrence of sexual assaults in FHS does touch upon a matter of public concern, thus satisfying the second subpart. See Bolduc, 629 F. Supp. 2d at 146. Fox still must prove the first subpart because a public employee who speaks as an employee, rather than as a citizen, has no First Amendment cause of action based on his "employer's reaction to the speech." Garcetti, 547 U.S. at 418 (citing Connick v. Myers, 461 U.S. 138, 147 (1983)); see Lane v. Franks, 134 S. Ct. 2369, 2379 (2014) ("The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."); Alves v. Bd. Of Regents of the Univ. Sys. Of Ga, 804 F. 3d 1149, 1164–65 (11th Cir. 2015) (finding that despite the fact that school psychologists' complaints may have touched upon a matter of public concern regarding safety of student body, they spoke as public employees and thus their speech was not protected by the First Amendment). "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." Williams v. Dall. Indep. Sch. Dist., 480 F.3d 689, 692 (5th Cir. 2007).

---

[8] The first two factors raise questions of law for the court. Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003).

The First Circuit applies a "two-step, context-specific inquiry" to determine whether speech is "made pursuant to the employee's official duties." Decotiis, 635 F. 3d at 31. "First, a court must ask, what are the employee's official responsibilities and second, was the speech at issue made pursuant to those responsibilities?" Id. (quotation marks omitted). "In identifying Plaintiff's official responsibilities, the proper inquiry is practical rather than formal, focusing on the duties an employee actually is expected to perform, and not merely those formally listed in the employee's job description." Id. (quotation marks omitted). Here, Fox's job responsibilities as a school social worker included providing counseling to students, which would reasonably include ensuring their emotional well-being.[9]

"Once the employment duties have been identified, the next question is: 'was the speech at issue made pursuant to those responsibilities?'" Id. at 32. "[T]he Court must take a hard look at the context of the speech." Id. "Although no one contextual factor is dispositive," the First Circuit identified some instructive non-exclusive factors: (1) "whether the employee was commissioned or paid to make the speech in question"; (2) "the subject matter of the speech"; (3) "whether the speech was made up the chain of command"; (4) "whether the employee spoke at [his] place of employment"; (5) "whether the speech gave objective observers the impression that the employee represented the employer when [he] spoke (lending it 'official significance')"; (6) "whether the employee's speech derived from special knowledge obtained during the course of [his] employment"; and (7) "whether there is a so-called citizen analogue to the speech." Id.

---

[9] At his deposition Fox described his duties as follows: "My duties were to counsel students who presented with myriad mental health problems, from suicidal ideation to domestic violence to relationship difficulties to academic problems, behavioral problems affecting their academic performance, substance abuse, polysubstance abuse. I'm sure that's not an exhaustive list, but that was the gist of my responsibilities." Doc. 82-3 at 5.

The focus is not on the content of the speech, but "the role the speaker occupied when he said it.'" Bolduc, 629 F. Supp. 2d at 146; see McGunigle v. City of Quincy, F. Supp. 3d 155, 170 (D. Mass. 2015).

Considering the Decotiis factors, the summary judgment record shows that Fox spoke as an employee of FHS and not as a private citizen. The undisputed facts establish that Fox's statements regarding the treatment of women, the sexual assault complaints and the related topics arose from special (in some cases confidential) knowledge he acquired in the course of his employment as a social worker at FHS. For example, Student 1 approached Fox because of and in his capacity as a social worker at FHS. He made his statements using his work email rather than private email accounts. He made other statements at work, during work meetings with other employees including supervisors, urging the school, in light of information he acquired in the performance of his duties, to take certain actions. The principal and other supervisors or mangers met with Fox in his capacity as an employee of the school. All of his statements were made up the chain of command while he was at work and would appear to an objective observer as official work statements. Fox's numerous statements asserting that he was giving voice to the interests of Student 1, specifically, or the students generally, only reinforce the conclusion that he did not speak as a private citizen. See Doc. 31 at 15 ("I am only speaking for a young 15 year old girl and her parents . . . ."); id. ("[A]s a public school employee [Fox was] mandated to report sexual abuse . . . ."); id. at 37 (advising Welch "As I have said many times to you and others, my interest lies in making sure the students of FHS are safe and are respectful toward one another."). There is evidence in the record that Fox discussed the matter on talk radio and published his resignation letter, but these instances occurred after he resigned. Doc. 37 at 47. Thus, they have no bearing on his departure from FHS or the conditions of his employment prior to his departure.

While sexual assault in our schools is an important public concern and while there may be a citizen analogue with respect to Fox's speech, the undisputed evidence demonstrates conclusively that in the circumstances of this case, Fox spoke in his role a social worker for FHS, and not as a private citizen.[10]

Fox advances one further argument—that his job responsibilities did not encompass student discipline or compliance with Title IX and thus, essentially, by definition all of his speech was necessarily in his capacity as a citizen. Doc. 87 at 10. The role he performed at FHS was not as rigidly defined as he now suggests; the actions he took in his job helped define his role. Accordingly, Defendants' Motion for Summary Judgment at to Count II is ALLOWED.

C. Violation of Title IX Against School Committee (Count III)

In Count III, Fox brings a retaliation claim under Title IX of the Education Amendments of 1972 against the Town of Framingham and the Framingham School Committee.[11] Doc. 31 at 9–10. Fox asserts he was "retaliated against . . . in response to his complaints regarding both the Defendants' deliberate indifference to sexual assault and harassment at the school as well as the Defendants' failure to comply with Title IX requirements." Id. at 10.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). Title IX also prohibits retaliation against those who complain of violations of the act.

---

[10] Because the Court finds that Fox did not speak as a private citizen, the Court does not reach the other Garcetti elements.

[11] "An implied right of action for such claims lies only 'against the educational institution itself.'" Morgan v. Town of Lexington, 823 F.3d 737 (1st Cir. 2016) (citing Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65 (1st Cir. 2002)). As such, the Town of Framingham is not a proper Defendant and summary judgment enters in its favor.

See 42 U.S.C. § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter [42 USCS §§ 2000e–2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

In order to prevail on a Title IX retaliation claim, a plaintiff must show that "she engaged in activity protected by Title IX, that the alleged retaliator knew of the protected activity, that the alleged retaliator subsequently undertook some action disadvantageous to the actor, and that a retaliatory motive played a substantial part in prompting the adverse action." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 67 (1st Cir. 2002); see id. (holding that "the jurisprudence of Title VII supplies an applicable legal framework" for Title IX claims.).[12] Here, the dispute centers on whether the Defendant took any sufficient retaliatory action. "In a retaliation case, a plaintiff need only 'show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Rodríguez-Vives v. P.R. Firefighters Corps. of P.R., 743 F.3d 278, 284 (1st Cir. 2014) (quoting Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)); see Morales-Vallellanes v. Porter, 605 F.3d 27, 36 (1st Cir. 2010) ("Examples of adverse employment actions in the retaliation context include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (quotation marks omitted). And,

---

[12] Given the First Circuit's holding in Frazier, this Court also looks to Title VII cases for guidance.

while "petty slights or minor annoyances that often take place at work," cannot sustain a retaliation claim, "cumulatively" Fox's assertions "paint a picture that would allow a factfinder to find [FHS's] conduct sufficient to deter a reasonable person" from complaining about sexual harassment or Title IX violations at FHS. Rodríguez-Vives, 743 F.3d at 285.

As detailed above, Fox maintains he was subjected to adverse employment actions because, among other things, he was threatened with imposed administrative leave, repeatedly asked if he intended to resign and imposed discipline that Superintendent Scott vacated. Viewing the entire summary judgment record and drawing all reasonable inferences in Fox's favor, the actions taken by FHS might have "dissuaded a reasonable worker from making or supporting a charge of" sexual harassment or a Title IX violation. Id. at 284. Accordingly, Defendants' Motion for Summary Judgment as to Count III is DENIED.

D.  Violation of Massachusetts Civil Rights Act (Count IV)

Pursuant to Mass. Gen. L. ch. 12 §§ 11H and 11I, Fox brings a claim against Defendant Welch for violation of the Massachusetts Civil Rights Act ("MCRA"). MCRA, "requires a Plaintiff to demonstrate that '(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion." Meuser v. Fed. Express Corp., 564 F.3d 507, 516 (1st Cir. 2009) (quoting Bally v. Ne. Univ., 532 N.E.2d 49, 51–52 (Mass. 1989)). "The Massachusetts legislature intended that even a direct deprivation of a plaintiff's rights 'would not be actionable under the act unless it were accomplished by means of one of these three constraining elements.'" Nolan v. CN8, 656 F.3d 71, 77 (1st Cir. 2011) (quoting Buster v. George W. Moore, Inc., 783 N.E.2d 399, 409 (Mass. 2003)).

In his Memorandum of Opposition to Defendants' Motion for Summary Judgment, Fox asserts that he was he was threatened with job repercussions for exercising his free speech rights. Doc. 87 at 16. However, as already discussed, Fox's First Amendment claim fails and, because the MCRA requires an actual deprivation of constitutional rights, as a matter of law his MCRA claim for deprivation of his First Amendment rights also fails. <u>Therrien v. Hamilton</u>, 849 F. Supp. 110, 115 (D. Mass. 1994) (MCRA claim failed absent First Amendment violation); <u>Bruno v. Town of Framingham</u>, Civ. Action No. 08-CV-11403, 2009 U.S. Dist. LEXIS 108729, *35 (D. Mass. Nov. 20, 2009) (same).

At the hearing, Fox argued that in Massachusetts there is a constitutional right to continued employment. However, there is no blanket constitutional right to continued employment and for purposes of the MCRA, a plaintiff must show that he has a right to continued employment based upon some contractual right to that employment. <u>Webster v. Motorola, Inc.</u>, 637 N.E. 2d 203, 206 (Mass. 1994) (no violation of MCRA where plaintiffs had "no contract right to their positions."); <u>Nolan</u>, 656 F.3d at 77 (MCRA claim failed as a matter of law where plaintiff's employment contract provided he could be fired at discretion of employer). Fox has submitted no evidence whatsoever as to any terms of any employment contract, nor has he submitted any evidence (or argument) as to why he was entitled to continued employment. Fox's bare conclusory statement that there is a right to continued employment is not enough to sustain his MCRA claim. Moreover, Fox's failure to set forth any argument as to why he was entitled to continued employment results in WAIVER of this claim. Accordingly, summary judgment as to Count IV is ALLOWED.

CONCLUSION

For the reasons stated, the Defendants' Motion for Summary Judgment is ALLOWED IN PART and DENIED IN PART. The Clerk will enter judgment for all Defendants as to Counts II and IV. The Clerk will enter judgment for the individual Defendants as to Counts I and III, and will enter judgment as to the Town of Framingham as to Count III. The remaining claims are Count I against the Town of Framingham and the School Committee and Count III against the School Committee. Within fourteen days from entry of this Order, the parties shall file a status report stating the anticipated duration of trial, whether all remaining parties consent to the exercise of jurisdiction of the magistrate judge (the parties shall not report individual positions and no adverse substance consequence will result from declining to consent), whether the parties request an opportunity to mediate with the Court's mediation program and, if not amenable to mediation, when the parties will be ready for trial.

                                                  SO ORDERED.

                                         /s/ Leo T. Sorokin
                                        Leo T. Sorokin
                                        United States District Judge